DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant/Appellant, Carl Brooks, appeals from his conviction for murder. We affirm.
 {¶ 2} On August 29, 2005, Defendant, a juvenile, was arrested for one count of murder, in violation of R.C. 2903.02(B). The predicate offense was felonious assault (R.C. 2903.11(A)(1)). The matter was transferred from the juvenile court to the general division and Defendant was thereafter indicted and brought to trial on April 18, 2006. Defendant was convicted by a jury on April 20, 2006, and sentenced on April 24, 2006, to an indeterminate period of not less than fifteen years and not more than the maximum of life imprisonment. *Page 2 
 {¶ 3} Defendant was convicted of the murder of Alvin Tarver. Another man (Toi Caldwell) was also convicted for Mr. Tarver's murder. Both men were accused of being part of an attack on Mr. Tarver on August 1, 2003, during which Mr. Tarver was beaten by a group of men, which attack also included Defendant and Mr. Caldwell jumping from a retaining wall on to Mr. Tarver's head. There was also testimony at trial that Defendant held a gun to Mr. Tarver's head but did not pull the trigger. After being attacked, Mr. Tarver was taken to the hospital and remained in a semi-conscious state under the care of the hospital and a nursing home until his death on March 15, 2005. The Summit County Medical Examiner ruled that the cause of Mr. Tarver's death was homicide because Mr. Tarver was "[b]eaten/struck by other(s)." The attack that led to Mr. Tarver's death was witnessed by several people, although some witness testimony was not procured until Mr. Tarver died and the police began a murder investigation, 19 months after the initial attack.
 {¶ 4} Defendant timely appealed his conviction raising three assignments of error.
 Assignment of Error No. 1 "The trial court committed reversible error when it denied [Defendant's] motion for judgment of acquittal under Crim.R. 29."
 {¶ 5} Defendant asserts that his conviction was not supported by sufficient evidence. *Page 3 
 {¶ 6} Defendant also asserts in his discussion under this assignment that his conviction was not supported by the manifest weight of the evidence, but that error was not assigned. Loc.R. 7(B) requires:
 "(3) A statement of the assignments of error.
 "(7) Argument and Law. * * * Each assignment of error shall be separately discussed and shall include the standard of review applicable to that assignment of error under a separate heading placed before the discussion of issues."
 {¶ 7} Moreover, it is well established that the "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997),78 Ohio St.3d 380, paragraph two of the syllabus. As a matter of appellate review, they involve different means and ends. See id. at 386-89. They also invoke different inquiries with different standards of review. Id.; State v. Smith (1997), 80 Ohio St.3d 89, 113. The difference, in the simplest sense, is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion.Thompkins, 78 Ohio St.3d at 390.
 {¶ 8} Accordingly, as Defendant's first assignment of error asserts only that the trial court erred by failing to grant Defendant's motion for acquittal pursuant to Crim.R. 29, which rule relates only to the sufficiency of the evidence, we will limit our review to whether the evidence at trial was sufficient to sustain Defendant's conviction. *Page 4 
 {¶ 9} Sufficiency is a question of law. Thompkins at 386;Smith at 113. If the State's evidence was insufficient as a matter of law, then on appeal, a majority of the panel may reverse the trial court. Thompkins, 78 Ohio St.3d. at paragraph three of the syllabus, citing Sec. 3(B)(3), Art. IV, Ohio Constitution. Because reversal for insufficiency is effectively an acquittal, retrial is prohibited by double jeopardy. Id. at 387, citing Tibbs v. Florida (1982),457 U.S. 31, 47. Under this construct, the State is deemed to have failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury. Thompkins,78 Ohio St.3d at 386; Smith at 113.
 {¶ 10} In a sufficiency analysis, an appellate court presumes that the State's evidence is true (i.e., both believable and believed), but questions whether the evidence produced satisfies each of the elements of the crime. See State v. Getsy (1998), 84 Ohio St.3d 180, 193. "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 273, citing State v.Eley (1978), 56 Ohio St.2d 169. This standard requires no exhaustive review of the record, no comparative weighing of competing evidence, and no speculation as to the credibility of any witnesses. Instead, the appellate court "view[s] the evidence in the light most favorable to the prosecution." Jenks, 61 Ohio St.3d at 273. *Page 5 
 {¶ 11} Defendant asserts that the State did not meet its burden of production and the trial court should have granted Defendant's Crim.R. 29 motion for judgment of acquittal. Specifically, Defendant asserts that (1) there was no physical evidence that linked Defendant to the crime; (2) no witness identified Defendant until two years had passed from the date of the attack; (3) the medical examiner ("Dr. Kohler") failed to review Mr. Tarver's medical history for the period prior to August 1, 2003, which revealed a pre-existing medical condition; and (4) Dr. Kohler did not testify that the infection that caused the death of Mr. Tarver was timely detected and treated by the nursing home.
 {¶ 12} R.C. 2903.02(B) states that: "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or2903.04 of the Revised Code." The predicate offense in this case was felonious assault in violation of R.C. 2903.11(A)(1), which stated as of the date of the attack, that "[n]o person shall knowingly * * * [c]ause serious physical harm to another." We find there was sufficient evidence to establish each element of the crimes.
 {¶ 13} Kimberlee James, Gerald Johnson, and Elaine Starcher identified Defendant as being one of the men who assaulted Mr. Tarver. Thomas Wichter, a fellow inmate, testified that Defendant had confessed to the crime. The jury also heard a tape of a call Defendant made from jail in which he said that he cut his *Page 6 
hair so he would not be recognized in court. As noted above, "the weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. Thus, it was for the jury to determine the credibility and weight to give to the identifying witnesses who did not provide such evidence until well after the assault occurred and Mr. Tarver had died, a jailhouse informant's testimony, and any other evidence. It is also for the jury to determine whether witness identification alone, without physical evidence, convinced them that Defendant was guilty beyond a reasonable doubt. Defendant has cited no authority for the proposition that a conviction cannot lie absent physical evidence. Thus, there was sufficient evidence to establish that Defendant physically harmed Mr. Tarver.
 {¶ 14} Dr. Kohler testified that Mr. Tarver's death was a homicide. He died of a septic syndrome (or infection) that resulted from being beaten and struck by others on August 1, 2003. Under DeHass, it is for the jury to determine the credibility and weight to give to Dr. Kohler's testimony given that she did not review Mr. Tarver's medical records for the period prior to August 1, 2003, or testify that the nursing home acted appropriately in identify and treating Mr. Tarver's treatment. It should be noted that neither did she testify that the nursing home acted inappropriately. Thus, there was sufficient evidence to establish that Defendant caused Mr. Tarver's death. *Page 7 
 {¶ 15} Based on the foregoing, we find that the State met its burden of production and the trial court properly denied Defendant's Crim.R. 29 motion for acquittal. Defendant's first assignment of error is overruled.
 Assignment of Error No. 2 "[Defendant's] Sixth Amendment right to counsel was violated in that [Defendant's] trial counsel was ineffective."
 {¶ 16} Defendant asserts that he was denied his right to effective counsel because his attorney failed to: (1) secure vital alibi testimony via subpoena; (2) move the court to pay an expert to testify as to identification and medical issues; (3) make a motion related to the witnesses who identified Defendant two years after the event; (4) propound discovery; (5) subpoena Mr. Tarver's medical records for periods both before and after the event; (6) make a motion related to the photo array; and (7) make a discharge motion based on the speedy trial statute.
 {¶ 17} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel.McMann v. Richardson (1970), 397 U.S. 759, 771. Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687. *Page 8 
An attorney properly licensed in Ohio is presumed competent. State v.Lott (1990), 51 Ohio St.3d 160, 174. The Defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis (Dec. 29, 1993), 9th Dist. No. 2245, at *5, citing Strickland, 466 U.S. at 690.
 {¶ 18} In demonstrating prejudice, the Defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. Either step in the process may be dispositive. We will now discuss the particular errors Defendant claims in this appeal to be ineffective assistance of counsel.
1. Alibi Witnesses.
 {¶ 19} Defendant asserts that despite the fact that trial counsel told the jury in opening statement that Defendant had an alibi and that the defense would present several witnesses to testify as to Defendant's whereabouts on the night in question, and the fact that defense counsel filed a notice of alibi, no alibi witnesses testified at trial. Defendant asserts that the witnesses did not appear because they were not subpoenaed. *Page 9 
 {¶ 20} The record reveals that a notice of alibi was filed and defense counsel named two witnesses in his opening statement that allegedly were going to testify in support of Defendant's alibi — Mr. DeLuca and William Patterson. It is also true that neither of these gentlemen testified and that trial counsel sought a brief continuance to try to locate Messrs. DeLuca and Patterson. There is nothing in the record to indicate that either was subpoenaed to appear at trial. However, there is nothing in the record to indicate that Mr. DeLuca and/or Mr. Patterson did not appear at trial solely because they were not subpoenaed or because they could not be located. After the trial resumed, defense counsel simply indicated that he would be presenting no testamentary evidence on behalf of the defense.
 {¶ 21} "The mere failure to subpoena witnesses is not a substantial violation of an essential duty to a client in the absence of showing that testimony of any one or more of the witnesses would have assisted the defense." State v. Wallace, 9th Dist. No. 06CA008889,2006-Ohio-5819, at ¶ 18, quoting Middletown v. Allen (1989),63 Ohio App.3d 443, 448. "However, the failure to subpoena a known alibi witness is a violation of the right to effective assistance of counsel." Id., citing Middletown, 63 Ohio App.3d at 448. "Where counsel is aware of potential alibi witnesses and fails to subpoena them to ensure their presence at trial, such failure constitutes a substantial violation of an essential duty owed to the accused." Middletown,63 Ohio App.3d at 448. *Page 10 
 {¶ 22} Even assuming deficiency, however, this case is different fromMiddletown, in that Defendant cannot establish that he was prejudiced by trial counsel's failure to secure the testimony of Messrs. DeLuca and Patterson. In Middletown, defense counsel failed to subpoena witnesses whose testimony clearly would have helped the defendant. While defense counsel made reference to the fact that Defendant was allegedly at a party with Messrs. DeLuca and Patterson on the night in question, opening statements are not evidence and there is nothing in the record to indicate Messrs. DeLuca and Patterson would have testified as promised. Moreover, Thomas Wichter testified that Defendant told him that he had been at a party on August 1, 2003, but left to come to Hazel Street (the crime scene) when Defendant's brother called him. Moreover, three witnesses identified Defendant as having been one of the people who assaulted Mr. Tarver on the night in question. Thus, based upon this evidence Defendant suffered no prejudice and was not deprived of the effective assistance of counsel for defense counsel's failure to subpoena alibi witnesses.
2. Expert Witnesses
 {¶ 23} Defendant asserts that trial counsel should have moved the court for costs in order to engage a medical expert, and that counsel's failure to do so cannot be construed as trial strategy. Defendant also asserts trial counsel should have moved for the appointment of an eyewitness identification expert. Defendant has provided no law or argument in support of the latter assertion and cites State v. *Page 11 Phillips (1994), 74 Ohio St.3d 72 in support of the former. Defendant asserts that a medical expert was needed to rebut the testimony of Dr. Kohler. Phillips does not support Defendant's proposition and sets forth no rule that the failure of trial counsel to engage an expert to rebut other expert testimony may not be considered a trial strategy.
 {¶ 24} Moreover, this court has specifically held, following Ohio Supreme Court precedent, that, "the decision of whether or not to seek appointment of an expert is trial strategy." State v. Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 19, citing State v. Fisk, 9th Dist. No. 21196, 2003-Ohio-3149, at ¶ 9, citing State v. Coleman (1989),45 Ohio St.3d 298, 307-08.
 {¶ 25} Finally, "[speculation is insufficient to establish the requisite prejudice. Downing at ¶ 27, citing State v. Stalnaker, 9th Dist. No. 21731, 2004-Ohio-1236, at ¶ 8-10. There is nothing to establish whether any such expert would have assisted the defense. Defendant was not deprived of the effective assistance of counsel for trial counsel's failure to move for the appointment of expert witness(es).
3. Identifying Witnesses
 {¶ 26} Defendant asserts that "trial counsel should have filed appropriate motions regarding the testimony of the witnesses" as Defendant was not identified until two years after the event. Defendant does not provide any facts, law, or analysis in support of this proposition, nor is it clear what motions defense counsel *Page 12 
should have filed. Although it can be presumed that Defendant was referring to a motion to suppress or a motion in limine, an "appellant has the burden on appeal." State v. McDaniel, 9th Dist. No. 05CA008690,2005-Ohio-5809, at ¶ 25. See App.R. 16(A)(7); Loc.R. 7(B)(7). "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." Id., citing State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. See also, App.R. 16(A)(7); Loc.R. 7(B)(7).
 {¶ 27} Moreover, it is not the duty of this Court to develop an argument in support of an assignment of error if one exists. Cardone v.Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at *8. As we have previously held, we will not guess at undeveloped claims on appeal. SeeMcPherson v. Goodyear Tire Rubber Co., 9th Dist. No. 21499,2003-Ohio-7190, at ¶ 31, citing Elyria Joint Venture v. Boardwalk Fries,Inc. (Jan. 3, 2001), 9th Dist. No. 99CA007336.
 {¶ 28} Accordingly, absent any law and argument or even a clear explanation of the alleged error, we will not develop Defendant's argument for him that trial counsel's failure to file some unknown motion constituted ineffective assistance of counsel.
 4. Discovery *Page 13 
 {¶ 29} Defendant next asserts that his trial counsel was ineffective because he "did not file any document regarding discovery." As with alleged error number three, there is nothing to support or explain this bald assertion and for the same reasons as set forth in alleged error number three, we will not develop Defendant's argument that trial counsel's failure to file some unknown "document regarding discovery" constituted ineffective assistance of counsel.
5. Medical Records
 {¶ 30} Defendant next asserts that he was denied the effective assistance of counsel because trial counsel did not subpoena Mr. Tarver's medical records for periods both before and after the assault. Presumably, this failure is error because such medical records might have been used to rebut Dr. Kohler's testimony as to the cause of Mr. Tarver's death, but Defendant does not make that argument or provide any law in support. For the same reasons set forth in our discussion related to errors three and four above, we will not construct Defendant's argument for him to find he was denied effective assistance of counsel.Downing at ¶ 27.
 {¶ 31} Moreover, even had Defendant's brief contained the proper law and analysis, what information any medical records would have yielded is completely speculative and, thus, cannot form the basis for a claim of ineffective assistance of counsel.
 6. Photo Array *Page 14 
 {¶ 32} Defendant asserts that trial counsel failed to "file an appropriate motion regarding the photo array," but as with errors three, four, and five, discussed above, does not assert what motion should have been filed and how he was prejudiced by the failure to file such motion. Defendant's entire argument related to this alleged error is contained in the single sentence quoted above. For the reasons set forth above, we will not construct Defendant's arguments and do not find this alleged error to be ineffective assistance of counsel.
7. Speedy Trial
 {¶ 33} Defendant finally asserts that trial counsel failed to "file an appropriate motion regarding the speedy trial issue," which constitutes ineffective assistance of counsel. Defendant then cites to law related to both post-accusation delay and Ohio's speedy trial statute, R.C.2945.71, et seq. Defendant does not, however, assert when exactly his right to speedy trial was violated.
 {¶ 34} Before we perform the speedy-trial calculations, Defendant acknowledges two speedy trial waivers. The first waiver was a sentence contained in a motion for continuance filed by defense counsel on October 17, 2005, that Defendant had personally agreed to waive his speedy trial rights so as to effectuate the continuance ("Waiver One"). Defendant does not deny that he so agreed. Waiver One operated to toll the speedy trial time.
 {¶ 35} The second waiver was a form signed by the Defendant filed with the court on February 28, 2006, that waived Defendant's speedy trial rights to a *Page 15 
date certain of April 18, 2006, the newly scheduled trial date ("Waiver Two"). Defendant asserts that Waiver Two relates to the State's motion for continuance filed on February 6, 2006, to continue the then trial date of March 28, 2006. Defendant asserts error in that the court issued a judgment entry continuing the trial on February 16, 2006, granting the state's motion for continuance, 12 days prior to the waiver being filed, and 11 days before the date the waiver was signed. Defendant asserts that Waiver Two could not have been made knowingly, voluntarily and intelligently because it was made after the continuance was granted. There is nothing in the record to establish that Waiver Two was related to the State's motion for continuance. Thus, the speedy trial time was tolled on February 28, 2006, through April 18, 2006.
 {¶ 36} Having established the effect of the waivers, we will now calculate whether Defendant's speedy trial rights have been violated. Pursuant to R.C. 2945.71, Defendant was required to be brought to trial within 270 days of his arrest. However, Defendant was incarcerated from the date of his arrest through trial. Thus, he was required to be brought to trial within 90 days pursuant to the three-for-one rule set forth in R.C. 2945.71(E).
 {¶ 37} The speedy trial clock begins to run once a juvenile is bound over for prosecution as an adult. State v. Bickerstaff (1984),10 Ohio St.3d 62, 67. Thus, the speedy trial clock began running on September 14, 2005. The clock ran for 55 days until November 9, 2005, when Defendant moved to continue the *Page 16 
November 15, 2005 trial date. The court granted Defendant's motion and a new trial date was set for January 24, 2006. The speedy trial clock was thus tolled for 76 days from November 9, 2005 through January 24, 2006, pursuant to R.C. 2945.72(H). The speedy trial clock ran for two more days (for a total of 57) until a second defense motion for continuance was granted on January 27, 2006, after a status conference was held on January 24, 2007. No new trial date was set at the January 24, 2006 status conference, but the speedy trial clock was still tolled given that the continuance was granted on a defense motion. On January 30, 2006, the court held a status conference and sua sponte set the trial for March 28, 2006, setting the speedy trial clock in motion for 28 days until February 27, 2006, when Defendant filed Waiver Two thereby tolling the speedy trial clock until April 18, 2006. The case was tried to a jury on April 18, 2006, at which time 86 days had passed from the date of Defendant's bindover through trial.
 {¶ 38} Pursuant to our analysis of the waivers at issue in this case and the calculations of speedy trial time related thereto, we find that Defendant was not denied his right to speedy trial. Defendant's assertion of an error by trial counsel is without merit.
 {¶ 39} Lastly, Defendant asserts that if this Court were to find that any single error discussed above were not sufficient, he should still be entitled to relief under the doctrine of cumulative error. Defendant cites State v. Garner (1995), 74 Ohio St.3d 49, and State v.DeMarco (1987), 31 Ohio St.3d 191, paragraph two of *Page 17 
the syllabus, for this proposition. The doctrine of cumulative error states that "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." Garner,74 Ohio St.3d at 64. The doctrine is not limited to ineffective assistance of counsel.
 {¶ 40} Here, each alleged error by trial counsel has been discussed above and each was overruled. Only in the case of the failure to subpoena an alibi witness, could any error be deemed harmless. "As such, the doctrine of cumulative error is not applicable as we did not find multiple instances of harmless error." State v. Wade, 9th Dist. No. 02CA0076-M, 2003-Ohio-2351, at ¶ 55, citing Garner, 74 Ohio St.3d at 64. Consequently, the doctrine of cumulative error does not apply and Defendant's second assignment of error is overruled.
 Assignment of Error No. 3 "The trial court committed reverible [sic] error and violated [Defendant's] right to due process of law by failing to provide [Defendant] a trial within the time prescribed by law."
 {¶ 41} Given our ruling related to Defendant's second assignment of error and our finding that Defendant was brought to trial within the time prescribed by law, Defendant's third assignment of error is moot and thereby overruled.
 {¶ 42} Each of Defendant's assignments of error is overruled and the judgment of the trial court is affirmed. *Page 18 
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 MOORE, J. CONCURS *Page 19 
 CARR, J. CONCURS IN JUDGMENT ONLY *Page 1