[Cite as *State v. Jenkins*, 2018-Ohio-4814.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28736 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BENJAMIN O. JENKINS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2016-02-0455-B |

DECISION AND JOURNAL ENTRY

Dated: December 5, 2018

HENSAL, Judge.

{¶1} Benjamin Jenkins appeals his drug-related convictions in the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} Detective Chris Carney was inspecting packages at a Federal Express facility with his K9 partner Cruiser when they intercepted one containing 1440 grams of methamphetamine. Posing as a Federal Express driver, Detective Carney delivered the package to its intended address, where it was accepted by Edna Chandler. She took it into her home and sent a text message to Mr. Jenkins to let him know it had arrived. Mr. Jenkins replied that he would pick it up at 1:00 p.m. A short time later, Ms. Chandler left the residence with a large purse, so law enforcement officers stopped and searched her. They did not find any of the drugs on her, and learned that she had merely received the package for Mr. Jenkins. At the request of law enforcement, Ms. Chandler sent another message to Mr. Jenkins, asking him to come earlier than

they had arranged. Upon his arrival, officers stopped and arrested him. They subsequently searched his home and found several jars containing marijuana.

{¶3} The Grand Jury indicted Mr. Jenkins for aggravated trafficking in methamphetamine, aggravated possession of methamphetamine, trafficking in marijuana, and possession of marijuana. The first two counts included major drug offender specifications. A jury found him guilty of the offenses, and the trial court sentenced him to 11 years imprisonment after determining that he was a major drug offender. Mr. Jenkins has appealed, assigning seven errors. Because he has argued some of the assignments of error together, this Court will address them together.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND MR. JENKINS GUILTY BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.

ASSIGNMENT OF ERROR II

MR. JENKINS' CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶4} Mr. Jenkins argues that the evidence against him was insufficient and that his convictions are against the manifest weight of the evidence. Whether convictions are supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶5}** If a defendant asserts that his convictions were against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d 380, at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

**{¶6}** Regarding the sufficiency of the evidence, Mr. Jenkins argues that he could not be convicted of trafficking the contents of the package because it was never in his possession, noting that he never touched it or its contents. He notes that, although Ms. Chandler sent him a text message telling him that "it" was here, there was nothing in the message to identify what "it" was or that he and Ms. Chandler had the same understanding. He also argues that there was no evidence establishing that he knew what was in the package. He further argues that there was no evidence that he has any connections in Arizona, which was where the package originated.

**{¶7}** Mr. Jenkins acknowledges that a search of his home uncovered firearms and thousands of dollars in cash. He argues that his ownership of the firearms was legal, however, and that the mere possession of money is not evidence of wrongdoing. He notes that Ms. Chandler, on the other hand, admitted illegally selling prescription drugs and accepted the

package at her home even though it was not addressed to her. He argues that Ms. Chandler also knowingly lied to law enforcement.

{¶8} Mr. Jenkins's arguments are limited in scope and confined to his methamphetamine-related offenses, so we will likewise confine our analysis to the arguments he has made regarding those offenses. The jury found Mr. Jenkins guilty of aggravated trafficking of methamphetamine under Revised Code Section 2925.03(A)(2) and aggravated possession of methamphetamine under Section 2925.11(A). Section 2925.03(A)(2) provides that no person shall knowingly "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person." Section 2925.11(A) provides that no person shall knowingly "obtain, possess, or use a controlled substance * * *." "Possess" means "having control over a thing or substance * * *." R.C. 2925.01(K). It may be actual or constructive. *State v. McShan*, 77 Ohio App.3d 781, 783 (8th Dist.1991).

{¶9} Ms. Chandler testified that she received a previous package for Mr. Jenkins after he asked her whether she wanted to make some money. At the time, he told her that the package was going to contain parts for a karaoke machine. On the day it was expected to arrive, however, Mr. Jenkins warned her that "if you think the scene look hot, don't get it * * *." According to Ms. Chandler, the day after the package arrived, Mr. Jenkins gave her $200 for waiting for it. She testified that it would have been $400, but she had owed Mr. Jenkins $200.

{¶10} "One cannot escape criminal liability by acting through agents." *State v. Williams*, 117 Ohio App.3d 488, 493 (1st Dist.1996). We note that the trial court instructed the jury on complicity, explaining that someone who "knowingly aids, abets, solicits, procures,

conspires, supports[,] assists, engages, cooperates with, advises, incites, or associates himself with another for the purpose of committing * * * the commission of a crime is to be regarded as if he were the principal offender[.]" *See* R.C. 2923.03(A).  Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient evidence for a rationale trier of fact to find that Mr. Jenkins knowingly had methamphetamine shipped to Ms. Chandler's residence and that he constructively possessed the drugs.  *See State v. Shinholster*, 9th Dist. Summit No. 25328, 2011-Ohio-2244, ¶ 24 (concluding evidence was sufficient to uphold drug trafficking and possession convictions because defendant arranged for and monitored the arrival of the package, directed the recipient of the package what to do upon receiving it, and was awaiting actual possession of the package when police arrested him); *State v. Bowerman*, 9th Dist. Medina No. 13CA0059-M, 2014-Ohio-4264, ¶ 13.  Mr. Jenkins's first assignment of error is overruled.

{¶11} Regarding the weight of the evidence, Ms. Chandler admitted selling certain prescription drugs, but denied selling methamphetamine.  Her testimony that she merely received the package for Mr. Jenkins was supported by her text message to him shortly after she accepted the package.  Even though the "it" was not identified in her message, Mr. Jenkins's reply did not express any uncertainty as to what Ms. Chandler meant.  When law enforcement searched Ms. Chandler's residence, they found the package still sealed and just inside her front door, which was consistent with her testimony that it belonged to someone else who would be coming to collect it.

{¶12} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness."

*State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29.  Upon review of the record, we cannot say that the jury lost its way when it chose to believe Ms. Chandler's testimony.  Mr. Jenkins's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT SUPPRESS THE CELL PHONE EVIDENCE THAT HAD BEEN COLLECTED PRIOR TO OBTAINING A WARRANT AND BEFORE MIRANDIZING DEFENDANT IN VIOLATION OF MR. JENKINS' CONSTITUTIONAL RIGHTS.

{¶13}  Mr. Jenkins next argues that the trial court incorrectly denied his motion to suppress.  A motion to suppress presents a mixed question of law and fact:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.)  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶14}  According to Mr. Jenkins, at the time of his arrest, multiple officers surrounded his vehicle with their weapons drawn.  After they removed him from the vehicle, they searched him and found three phones.  Before advising him of his *Miranda* rights, the officers asked him for the passwords to the phones, which he provided.  Mr. Jenkins argues that the court should have suppressed any evidence found on the phones because he was not adequately advised of his rights.

{¶15}  Following a hearing on Mr. Jenkins's motion to suppress, the trial court found that the phones were not searched until after law enforcement obtained a search warrant.  It, therefore, concluded that the information on the phones "would have been inevitably obtained[,]"

even if the officers improperly obtained Mr. Jenkins's password at the time of his arrest. Mr. Jenkins has not challenged the trial court's determination on appeal. We also note that Mr. Jenkins has not identified any evidence recovered from his phones that was used against him at trial. Accordingly, any error by the trial court in denying his motion to suppress was harmless beyond a reasonable doubt. Crim.R. 52(A); *State v. Reynolds*, 80 Ohio St.3d 670, 675 (1998). Mr. Jenkins's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR WHEN IT FOUND MR. JENKINS WAS A MAJOR DRUG OFFENDER.

**{¶16}** Mr. Jenkins next argues that the trial court incorrectly determined that he was a major drug offender. He argues that the jury was required to make that determination but the court released the jury before it did.

**{¶17}** Section 2941.1410 provides that, "[e]xcept as provided in sections 2925.03 and 2925.11 of the Revised Code, the determination by a court that an offender is a major drug offender is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender is a major drug offender." Section 2925.03(C)(1) provides the offense level for trafficking offenses involving a schedule II drug such as methamphetamine. It provides, in relevant part, that "[i]f the amount of the drug involved equals or exceeds one hundred times the bulk amount * * * aggravated trafficking in drugs is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree." R.C. 2953.03(C)(1)(f). Section 2925.11 contains a comparable provision regarding aggravated possession of methamphetamine. R.C. 2925.11(C)(1)(e). *See also* R.C. 2929.01(W).

{¶18} The jury found Mr. Jenkins guilty of aggravated trafficking in drugs. It also found that the amount of the drugs involved equaled or exceeded 100 times the bulk amount of methamphetamine. Similarly, it found Mr. Jenkins guilty of aggravated possession of drugs and found that the amount of the drugs equaled or exceeded 100 times the bulk amount of methamphetamine. Once the jury made those findings, Mr. Jenkins became a major drug offender by operation of Sections 2925.03(C)(1)(f) and 2925.11(C)(1)(e). *See State v. Marbury*, 9th Dist. Summit No. 25158, 2010-Ohio-5989, ¶ 30. Upon review of the record, we conclude that the trial court did not violate Mr. Jenkins's right to have the jury decide an essential element of his case.

{¶19} Mr. Jenkins also argues that he could not be sentenced as a major drug offender because, under Section 2929.01(W), a major drug offender is someone who has been "convicted of" an offense. R.C. 2929.01(W). He argues that someone has not been "convicted of" an offense until he is both found guilty and sentenced for it. According to Mr. Jenkins, because he had not been sentenced for any qualifying drug offenses at the time the trial court classified him as a major drug offender, the classification was incorrect.

{¶20} Although the term "conviction" normally includes both a finding of guilt and a sentence, that is not always the case. *State ex rel. Watkins v. Fiorenzo*, 71 Ohio St.3d 259, 260 (1994). For example, in *Fiorenzo*, the Ohio Supreme Court considered a statute that provided that someone "who is convicted of or pleads guilty to" theft in office was disqualified from holding any public office. *Id*. at 259-260. The Supreme Court, noting that only a guilty plea was required to invoke the sanction, concluded that the word "convicted" in the statute "logically refers only to a determination of guilt and does not include sentencing upon that determination." *Id*. at 260.

**{¶21}** Similar to the statute at issue in *Fiorenzo*, Section 2929.01(W) provides that a major drug offender is an offender "who is convicted of or pleads guilty to" certain drug offenses. In this context, we conclude that the phrase "is convicted of" refers only to a finding of guilt, not a finding of guilt and a sentence. To accept Mr. Jenkins's construction of R.C. 2929.01(W) would lead to "unreasonable or absurd results[.]" *State v. Dues*, 8th Dist. Cuyahoga No. 100861, 2014-Ohio-5276, ¶ 55 (rejecting argument that "is convicted of" language in Section 2929.01(W) refers to both a finding of guilt and a sentence). We, therefore, conclude that the trial court did not err when it sentenced Mr. Jenkins as a major drug offender. Mr. Jenkins's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

> THE TRIAL COURT COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT ADMITTED CALLS BETWEEN MR. JENKINS AND HIS WIFE AS EVIDENCE DUE TO THE PREJUDICIAL NATURE AND HEARSAY.

**{¶22}** Mr. Jenkins next argues that the trial court incorrectly admitted jail calls that he had with his wife. According to Mr. Jenkins, the calls should have been excluded under Evidence Rule 403(A) because they were more prejudicial than probative. He argues that his wife was the predominant speaker during the calls and that she mainly described what happened when law enforcement searched their home, which did not involve him. They also discussed which attorney Mr. Jenkins should hire. Mr. Jenkins notes that, while he admitted messing up to his wife, there was no way for the jury to determine whether he meant that he messed up by being a drug dealer, getting arrested, or simply being in the wrong place at the wrong time. Mr. Jenkins also argues that his wife's part of the conversation was hearsay.

**{¶23}** Regarding Mr. Jenkins's hearsay argument, this Court has held that, when the telephone conversations of a defendant are admitted, the statements of the defendant are

admissions and, therefore, by definition, not hearsay. *State v. Townsend*, 9th Dist. Summit No. 27316, 2015-Ohio-1124, ¶ 13. The statements of the other speaker also are not hearsay if "they were admitted simply to provide context" for the defendant's statements. *Id.* The trial court in this case instructed the jury that it could not consider the statements of Mr. Jenkins's wife for the truth of the matter asserted but to consider them in context and to explain the statements and reactions of Mr. Jenkins.

{¶24} Regarding Mr. Jenkins's argument that the conversations were more prejudicial than probative, it does not appear from the record that he preserved that argument for appellate review. *State v. Reed*, 9th Dist. Summit No. 18076, 1997 Ohio App. LEXIS 3751, *7 (Aug. 20, 1997), citing Evid.R. 103(A)(1). Accordingly, because Mr. Jenkins forfeited this argument and has not developed a plain-error argument on appeal, we decline to address whether the calls should have been excluded under Rule 403(A). *State v. McCallum*, 9th Dist. Medina No. 08CA0037-M, 2009-Ohio-1424, ¶ 19. Mr. Jenkins's fifth assignment of error is overruled.

ASSIGNMENT OF ERROR VI

THE PROSECUTION ENGAGED IN MISCONDUCT AND PREJUDICIAL BEHAVIOR DURING CLOSING AND SUCH WAS REVERSIBLE AND PLAIN ERROR.

{¶25} Mr. Jenkins also argues that the prosecutor engaged in misconduct during closing argument. In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6. "The touchstone of the analysis 'is the fairness of the trial,

not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

**{¶26}** Mr. Jenkins argues that the prosecutor misrepresented the idea of proof beyond a reasonable doubt when he drew a gas gauge with a line at approximately 75% full and suggested that the jury's confidence in a defendant's guilt only had to reach that line. Mr. Jenkins also argues that the prosecutor inappropriately compared him to a Mafia Don who ordered a murder or the getaway driver for a bank robbery. The prosecutor also opined that someone who is addicted to methamphetamine would not be able to feed their children and would endure other hardships from which Mr. Jenkins was profiting. Mr. Jenkins argues that the prosecutor further incited the passions of the jury by claiming that he was distributing poison to people and was responsible for the heartache of drug addicts.

**{¶27}** The State argues that it was Mr. Jenkins who introduced the idea of a gas gauge and that the prosecutor was merely correcting Mr. Jenkins's misrepresentation of reasonable doubt. It notes that Mr. Jenkins compared proof beyond a reasonable doubt to the bar on the gauge immediately before full and said that there could only be "a teeny tiny bit of doubt[.]" The prosecutor, on the other hand, acknowledged that there is no algorithm or mathematical formula for beyond a reasonable doubt and told the jury that it would have to follow the judge's instructions. The State also argues that the line that the prosecutor drew on the gas gauge was higher than 75%. Upon review of the record, we conclude that the prosecutor's statements about the gas gauge and his drawing of it did not constitute misconduct.

**{¶28}** Regarding the comparisons that the prosecutor made, it is clear from the record that the prosecutor was merely providing examples that might be more familiar to the jury, in which someone could be considered responsible for a crime even though he never fired a gun or

touched stolen money.  We agree with the State that the examples were appropriate illustrations of the concepts of constructive possession and complicity.

{¶29} Regarding the prosecutor's statements about Mr. Jenkins profiting off drug addicts and about the hardships that drug addicts endure, we note that the State sought forfeiture of thousands of dollars that law enforcement found at Mr. Jenkins's home.  The State theorized that the money had to be the proceeds of Mr. Jenkins's drug sales since he and his wife made moderate wages at their jobs.  This Court has reviewed the prosecutor's statements and concludes that they were not improper and did not deprive Mr. Jenkins of a fair trial.  Mr. Jenkins's sixth assignment of error is overruled.

ASSIGNMENT OF ERROR VII

THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS DENIED
MR. JENKINS A FAIR TRIAL.

{¶30} Mr. Jenkins's final argument is that, even if the above alleged errors could be considered harmless error, his convictions should be reversed under the cumulative error doctrine.  "Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial."  *State v. Boone*, 9th Dist. Summit No. 26104, 2013-Ohio-2664, ¶ 38, citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus.  If there were not multiple errors, however, the cumulative error doctrine does not apply.  *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132.  Upon review, we conclude that, because there were not multiple instances of error, the cumulative error doctrine does not apply.  *State v. Brooks*, 9th Dist. Summit No. 23237, 2007-Ohio-1424, ¶ 40.  Mr. Jenkins's seventh assignment of error is overruled.

III.

**{¶31}** Mr. Jenkins's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

DENISE FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.