DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Billy McShepard has appealed from his conviction and sentence in the Lorain County Court of Common Pleas. We affirm in part and reverse in part.
 I {¶ 2} In the early morning hours of November 25, 2004, several officers drove to McShepard's residence to question him about a shooting incident that had occurred an hour or so earlier. Five officers approached the residence in full uniform while carrying flashlights, but they chose to "black out" their vehicles so *Page 2 
as not to draw attention to themselves. Sergeant Dennis Davis walked up to McShepard's front door and knocked loudly, identifying himself as a police officer. He was able to see inside the window of the residence and recognized McShepard standing in the living room. Sergeant Davis then saw McShepard retrieve a handgun from the waistband of his pants and approach the window. Sergeant Davis alerted the other officers to the gun, and they scattered to seek better cover. Meanwhile, McShepard continued to look out the window and shouted, "who the f**k is in my driveway?" Although one of the officers shouted "it's the police" in return, McShepard fired a shot from the window down towards his driveway. The bullet entered the hood of his parked car a few feet from where several officers stood. The police then identified themselves again, and McShepard surrendered without further incident.
 {¶ 3} Police conducted an initial sweep of McShepard's residence to ensure their safety, and then set up a perimeter while they obtained a search warrant for a more thorough search. During their search, police uncovered several items, including: (1) four handguns and one sawed off shotgun from the living room; (2) two digital scales coated with cocaine and marijuana residue; (3) several plastic baggies containing marijuana residue; (4) vegetable matter with a total weight of 673.31 grams which contained marijuana; and (5) $1,551 in cash. Police also obtained a warrant for McShepard's safety deposit box, which contained approximately $60,000 in cash. *Page 3 
 {¶ 4} The grand jury initially indicted McShepard on charges in two separate cases, Lorain Common Pleas Nos. 04CR066836 05CR067231. However, the trial court later granted a motion to consolidate the two cases. McShepard's jury trial commenced on September 11, 2006. The jury found McShepard guilty of felonious assault on a peace officer pursuant to R.C. 2903.11(A)(2) and (D)(1), having weapons under disability pursuant to R.C. 2923.13(A)(2)/(3), three counts of receiving stolen property pursuant to R.C. 2913.51(A), trafficking in marijuana pursuant to R.C. 2925.03(A)(2), possession of cocaine pursuant to R.C.2925.11(A), possession of criminal tools pursuant to R.C. 2923.24(A), and possession of drug abuse paraphernalia pursuant to R.C.2925.14(C)(1). Additionally, the jury found McShepard guilty of multiple firearm specifications. The trial court sentenced McShepard to a total of twenty years in prison and five years of mandatory post-release control.[1]
 {¶ 5} On October 2, 2006, McShepard filed his notice of appeal. On July 12, 2007, this Court dismissed McShepard's appeal because he failed to timely file *Page 4 
his brief after receiving an extension of time to do so. On September 17, 2006, McShepard filed a motion for reopening along with an affidavit from his new counsel, indicating that prior appellate counsel's ineffectiveness prejudiced him. On September 28, 2007, we granted McShepard's motion. McShepard's appeal is now properly before this Court, raising four assignments of error for our review. For ease of analysis, we combine several assignments of error.
 II Assignment of Error Number One
"BILLY MCSHEPARD WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT ENTERED A JUDGMENT OF CONVICTION AGAINST HIM IN THE ABSENCE OF SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION."
 {¶ 6} In his first assignment of error, McShepard argues that his convictions for felonious assault, receiving stolen property, drug trafficking, and possession of cocaine were based on insufficient evidence. We disagree.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins
(1997), 78 Ohio St.3d 380, 386, overruled on other grounds. *Page 5 
 {¶ 7} The test for sufficiency requires a determination of whether the State has met its burden of production at trial. State v. Gulley (Mar. 15, 2000), 9th Dist. No. CA19600, at *1, citing Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
Felonious Assault {¶ 8} At the time of McShepard's indictment, R.C. 2903.11 provided, in part:
 "(A) No person shall knowingly[:]
 "* * *
 "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.
 "* * *
 "(D) * * * If the victim of a violation of division (A) of this section is a peace officer, felonious assault is a felony of the first degree."
The phrase `deadly weapon' means "any instrument, device, or thing capable of inflicting death[.]" R.C. 2923.11(A). Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 9} McShepard argues that his felonious assault conviction was based on insufficient evidence because: (1) he did not intend to shoot anyone when he fired *Page 6 
his gun; and (2) there was no evidence that anyone suffered physical or mental harm as a result of his actions. McShepard's first argument fails because the State need not prove actual intent in order to sustain a conviction under R.C. 2903.11(A)(2). The felonious assault statute only requires that a person knowingly commit an act. Thus, the mens rea element of the statute may be satisfied "regardless of [a defendant's] purpose" or his actual intent. See R.C. 2901.22(B).
 {¶ 10} The record reflects that the police officers announced their presence when they arrived at McShepard's residence. Sergeant Davis knocked loudly on McShepard's door and indicated that he was a police officer. Additionally, when McShepard yelled, "who the f**k is in my driveway," Sergeant Super yelled, "it's the police" in response. It was only after Sergeant Super shouted this response that McShepard fired his gun. The record further evinces that Sergeant Davis could see McShepard from his position on the front porch. This strongly suggests that McShepard saw Sergeant Davis as well. At trial, McShepard claimed that he aimed his gun at his car on purpose because he did not know who was in his driveway and just wanted to scare off whoever it might be. To agree with McShepard's version of the events, one would have to believe that he could see his car in the driveway, but not Sergeant Davis or the other officers standing directly next to the car. The facts simply do not support such an assertion. McShepard fired his gun into an area directly next to where several officers were *Page 7 
standing. Given the circumstances, there was a high probability that McShepard's conduct could have resulted in harm to one or more of the officers. See 2901.22(B) (specifying that a person acts knowingly when "his conduct will probably cause a certain result or will probably be of a certain nature"). We find that the record contains adequate facts to support McShepard's felonious assault conviction. SeeThompkins, 78 Ohio St.3d at 386 (defining sufficiency as a test of adequacy).
 {¶ 11} As to McShepard's second argument, the felonious assault statute does not require the State to present evidence of physical or mental harm to a victim. The statute prohibits any person from "caus[ing] or attempt[ing] to cause physical harm to another[.]" (Emphasis added.) R.C. 2903.11(A)(2). In viewing the evidence in a light most favorable to the State, we find that the evidence supports the conclusion that McShepard attempted to cause physical harm to one or more officers when he fired a bullet into an area mere feet from where they were standing. McShepard's challenge to his felonious assault conviction lacks merit.
Receiving Stolen Property {¶ 12} R.C. 2913.51, provides as follows:
 "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 "* * * *Page 8 
 "(C) * * * [I]f the property involved is a firearm or dangerous ordnance * * * receiving stolen property is a felony of the fourth degree."
McShepard's convictions for receiving stolen property were based on his possession of three separate handguns: a Glock, a Hi Point, and a Bersa. Police recovered these handguns, as well as a fourth, from McShepard's residence on the night of their search. McShepard argues that the evidence "was less than clear" that he knowingly received this stolen property. He claims that he purchased the guns from other individuals and had no reason to know that they were stolen.
 {¶ 13} Detective Dennis Moskal testified that during his investigation he obtained Alcohol, Tobacco, and Firearm ownership sheets for each of the three handguns. He further testified that he sent a letter to the registered owner of the Glock and that the owner responded that the gun had been stolen in 1999. He also noted that the serial numbers on Glock had been scratched as if someone had tried to make the gun less traceable. The registered owners of the Hi Point and Bersa guns actually testified at McShepard's trial. They both indicated that their guns went missing at some point and that they believed the guns had been stolen. Further, they both identified the Hi Point and the Bersa recovered from McShepard's home as the guns that they had previously owned. McShepard testified that he bought all four of his handguns privately from two separate individuals and paid a total of $400 for the guns. He stated that the individuals were "friend[s] of a friend" who were going through some troubles and had asked *Page 9 
if he would like to purchase "some weapons" they had for sale. On cross examination, McShepard admitted that he paid a low price of approximately $100 per gun, but denied that he noticed any scratched off serial number on the guns.
 {¶ 14} In viewing the evidence in a light most favorable to the State, we cannot say that this evidence was insufficient to support McShepard's convictions. Based on the evidence, a rational trier of fact could have concluded that McShepard had reasonable cause to believe that the Glock, Hi Point, and Bersa handguns were stolen when he purchased them. See R.C. 2913.51(A). McShepard's sufficiency argument as to his receiving stolen property convictions is overruled.
Drug Trafficking {¶ 15} An appellant bears the burden of demonstrating error on appeal. See App.R. 16(A)(7); Loc.R. 7(B)(7). "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. See, also, App.R. 16(A)(7); Loc.R. 7(B)(7). Although McShepard's brief contains a blanket statement that, "[t]he evidence presented by the State was insufficient to justify [his] conviction for * * * drug trafficking," he fails to set forth any actual argument with regard to his conviction for trafficking in marijuana. He does not provide any law in support of this claim, nor does he provide a single citation to the record. As such, McShepard has not affirmatively *Page 10 
demonstrated error on appeal. See Taylor, supra; see, also, App.R. 9(B). We decline to address his challenge to his trafficking conviction.
Possession of Cocaine {¶ 16} At the time of McShepard's indictment, R.C. 2925.11 provided, in part:
 "(A) No person shall knowingly obtain, possess, or use a controlled substance.
 "* * *
 "(C) Whoever violates * * * this section is guilty of one of the following:
 "* * *
 "(4) If the drug involved in the violation is cocaine * * *, whoever violates * * * this section is guilty of possession of cocaine[.]
 "(a) Except as otherwise provided * * *, possession of cocaine is a felony of the fifth degree[.]"
McShepard's sole argument against his possession conviction is that, "the evidence at best showed some trace amount [of cocaine] was identified on a scale found within the home." Yet, R.C. 2925.11(A) does not specify that a person must possess a certain amount of cocaine before that person can be convicted. "R.C. 2925.11 punishes conduct for the possession of any amount of a controlled substance. It does not qualify the crime by stating that the amount of the drug must be of a certain weight." State v. Teamer (1998), 82 Ohio St.3d 490, 491.
 {¶ 17} Moreover, the jury convicted McShepard of a fifth degree felony. R.C. 2925.11(C)(4)(a) governs fifth degree felony convictions for cocaine *Page 11 
possession. Unlike the other provisions of R.C. 2925.11(C)(4), subsection (a) does not require a finder of fact to determine the specific amount of cocaine that an offender possessed. Under subsection (a), a fifth degree felony conviction is appropriate for an offender who possessed an unspecified amount of cocaine or any amount less than or equal to five grams. See R.C. 2925.11(C)(4) (increasing a felony conviction for cocaine possession past a felony of the fifth degree when an offender is found to have possessed an amount exceeding five grams). Consequently, in viewing the evidence in a light most favorable to the prosecution, we cannot say that the cocaine residue found on McShepard's scale was insufficient to sustain his fifth degree felony conviction for possession. McShepard's first assignment of error is overruled.
 Assignment of Error Number Two "THE TRIAL COURT DENIED MR. MCSHEPARD DUE PROCESS OF LAW, BY SENTENCING HIM TO MORE THAN A MINIMUM TERM OF IMPRISONMENT, IN VIOLATION OF THE EX POST FACTO DOCTRINE."
 Assignment of Error Number Three "THE TRIAL COURT DENIED MR. MCSHEPARD DUE PROCESS OF LAW, BY SENTENCING HIM WITHOUT DUE CONSIDERATION TO OHIO'S GENERAL GUIDANCE STATUTES."
 {¶ 18} In his second and third assignments of error, McShepard challenges the constitutionality of his sentences. He argues that the retroactive application of the Ohio Supreme Court's decision inState v. Foster, 109 Ohio St.1, 2006-Ohio- *Page 12 
856, violates his due process rights and the Ex Post Facto Clause and that he was entitled to receive the statutory minimum. He further argues that the trial court abused its discretion in failing to "discuss, consider[, ] or recognize" the sentencing guideline factors set forth in R.C. 2929.11 and R.C. 2929.12 when imposing his sentence.
 {¶ 19} We settled the question of the constitutionality ofFoster's retroactive application in State v. Newman, 9th Dist. No. 23038, 2006-Ohio-4082. In Newman, we overruled the defendant's claim that Foster should not apply and that he should receive the minimum or lesser sentence based on the sentencing presumptions that applied pre-Foster. Newman at ¶ 10-12. One month later, we rejected a similar argument in State v. Hildreth, 9th Dist. No. 06CA008879, 2006-Ohio-5058. In Hildreth, the defendant argued that the trial court erred in ordering him to serve consecutive sentences and that Foster's retroactive application to his case violated his constitutional rights.Hildreth at ¶ 5. We held that the defendant's argument lacked merit because "the application of Foster in th[at] context [was] not a violation of the prohibition against ex post facto laws, nor [did] it violate Defendant's due process rights." Id. at ¶ 6. As our previous cases have noted, "[w]e are obligated to follow the Ohio Supreme Court's directive and we are, therefore, bound by Foster. Furthermore, we are confident that the Supreme Court would not direct us to violate the Constitution." Hildreth at ¶ 10, *Page 13 
quoting Newman at ¶ 11, citing U.S. v. Wade (C.A.8, 2006), 435 F.3d 829,832. McShepard's argument that Foster's application is unconstitutional lacks merit.
 {¶ 20} "[P]ost-Foster, this Court reviews felony sentences under an abuse of discretion standard." State v. Windham, 9th Dist. No. 05CA0033,2006-Ohio-1544, at ¶ 12. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 21} The record indicates that the trial court considered the general guidance statutes when sentencing McShepard. The court's September 20, 2006 journal entry provides, in part:
 "The Court finds that a prison sanction is appropriate in order to comply with the principles and purposes of sentencing. The Court finds that under [R.C.] 2929.12, the factors indicating that recidivism is more likely outweigh those factors indicating that recidivism is less likely and the factors increasing seriousness outweigh those decreasing seriousness."
During the sentencing hearing, the trial judge also stated that, "[g]uns are bad things[.] People can get killed. People do get killed." Further, McShepard never expressed any remorse for his actions. He repeatedly stated that by firing his gun he handled the situation "the American way." Given the seriousness of McShepard's conduct and the trial court's reasoning, we cannot say that the trial *Page 14 
court abused its discretion in sentencing McShepard to twenty years in prison. McShepard's second and third assignments of error are overruled.
 Assignment of Error Number Four "THE TRIAL COURT SENTENCE IS VOID BECAUSE IT FAILED TO NOTIFY MR. MCSHEPARD AT THE SENTENCING HEARING ABOUT POSTRELEASE CONROL; RESENTENCING AT A DE NOVO SENTENCING HEARING IS MANDATED."
 {¶ 22} In his fourth assignment of error, McShepard argues that he is entitled to a resentencing because the trial court failed to notify him of post-release control during his initial sentencing hearing. We agree.
 {¶ 23} Recently, the Ohio Supreme Court clarified that when a trial court fails to notify an offender during his sentencing hearing that he may be subject to post-release control for a particular offense, the sentence for that offense is void and the offender must be resentenced.State v. Bezak, 114 Ohio St.3d 94, 2007-Ohio-3250, syllabus. See, also,State v. Simpkins, Slip Opinion No. 2008-Ohio-1197, syllabus. A trial court cannot remedy its failure to notify a defendant of post-release control by incorporating that notice into its journal entry imposing sentence. State v. Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, paragraph two of the syllabus. Nor can the trial court simply advise a defendant of post-release control upon resentencing. Bezak at ¶ 13. "[I]n such a resentencing hearing, the trial court may not merely inform the offender of the imposition of postrelease control and automatically reimpose the original sentence. Rather, the effect of *Page 15 
vacating the trial court's original sentence is to place the parties in the same place as if there had been no sentence." Id.
 {¶ 24} On September 18, 2006, the trial court held McShepard's sentencing hearing. Although the trial judge sentenced McShepard to twenty years in prison, he failed to make any reference to post-release control. On September 20, 2006, the trial court held an additional hearing solely for the purpose of adding a term of post-release control to McShepard's sentence. The court did not reference the underlying term of twenty years that it had imposed two days before. Furthermore, the court held the September 20th hearing without McShepard's counsel, who was engaged in another proceeding. The State argues that McShepard's sentence is not void because the trial court did not journalize its sentencing order until the afternoon of September 20, 2006. It argues that by waiting to journalize the order, the trial court essentially held one sentencing hearing broken up into two parts. We disagree.
 {¶ 25} We can find no law to support the State's assertion that a trial judge may engage in piecemeal sentencing so long as he waits to journalize the sentencing entry. In analyzing whether or not a trial court correctly informed the defendant of post-release control during sentencing, the focal point of the analysis is the sentencing hearing itself, not the post-hearing journal entry. See Jordan at ¶ 16-17 (requiring the trial court to notify defendant at the sentencing hearing and then later to incorporate that notice into the journal entry). A trial court cannot *Page 16 
remedy a defect in a sentencing hearing simply by issuing a more informative journal entry. Id. Similarly, upon concluding a sentencing hearing, a court cannot subsequently hold one or more "mini-hearings" to sentence the defendant to other items that it failed to impose or explain in the sentencing hearing. McShepard's sentencing hearing consisted solely of the imposition of his twenty year prison sentence. In a separate hearing two days later, the trial court added five years of post-release control to McShepard's sentence. McShepard's counsel was not present at this second hearing. Moreover, the trial court limited the substance of this hearing to his explanation that he was sentencing McShepard to post-release control. He did not conduct the entire sentencing hearing again, nor did he review the full breadth of McShepard's sentence. In fact, the trial judge began the September 20th hearing by stating, "[o]kay. It's pretty boilerplate and standard at this point."
 {¶ 26} We find this procedure analogous to the procedure that the Supreme Court struck down in Bezak. In remedying a defective sentencing hearing, a trial court "may not merely inform the offender of the imposition of postrelease control and automatically reimpose the original sentence." Bezak at ¶ 13. It was improper for the court to treat its imposition of post-release control as a "boilerplate" matter that merely had to be read into the record. McShepard is entitled to a sentencing hearing, which includes all of the elements of his sentence and otherwise complies with the applicable law. McShepard's fourth assignment of error has merit. *Page 17 
 III {¶ 27} McShepard's first, second, and third assignments of error are overruled. McShepard's fourth assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded soley for a new sentencing hearing and resentencing in accordance with this opinion.
 {¶ 28} Lastly, based upon the argument presented in McShepard's application for reopening, we find that McShepard's previous appellate counsel was deficient in failing to file a timely brief and that McShepard was prejudiced by that deficiency. See App.R. 26(B)(7). Accordingly, we vacate our prior judgment of dismissal dated July 12, 2007.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 18 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
SLABY, J. MOORE, P. J. CONCUR
[1] While his criminal case was pending, the State also filed a civil forfeiture action against McShepard, claiming that he had previously used drug proceeds to purchase two parcels of real estate. Although the forfeiture action was unrelated to the criminal case, the trial judge presiding over the forfeiture stayed the action pending the resolution of the criminal case. After McShepard was convicted and sentenced, the trial judge reinstated the forfeiture action and ordered forfeiture. We disposed of McShepard's appeal on the civil forfeiture ruling inState v. McShepard, 9th Dist. No. 07CA009118, 2007-Ohio-6006. *Page 1