[Cite as *State v. Shinholster*, 2011-Ohio-2244.]

STATE OF OHIO        )                IN THE COURT OF APPEALS
                         )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                        C.A. No.     25328

      Appellee

      v.                               APPEAL FROM JUDGMENT
                                  ENTERED IN THE
CHRISTOPHER L. SHINHOLSTER    COURT OF COMMON PLEAS
                                  COUNTY OF SUMMIT, OHIO
      Appellant                   CASE No.    CR 09 07 2264(A)

DECISION AND JOURNAL ENTRY

Dated: May 11, 2011

---

WHITMORE, Judge.

{¶1}   Defendant-Appellant, Christopher L. Shinholster, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2}   On July 23, 2009, while surveying parcels being unloaded at a local FedEx distribution center, a detective from the Summit County Sheriff's Department narcotics division identified a suspicious package addressed to an Akron residence on Hardesty Boulevard. The detective brought in a drug-sniffing dog who alerted on the package. After obtaining a search warrant to open the package, the detective determined the package contained over a kilogram of cocaine. Akron police were contacted to perform a controlled delivery of the package to the target residence mid-morning that same day. Before the delivery, police surveillance identified a silver Bonneville sitting in front of the target residence, with Shinholster sitting in the driver's seat looking toward the house. The car left, then returned shortly thereafter and circled the block

again. Approximately five minutes after the delivery, police saw the silver Bonneville pulling into a nearby driveway. When police stopped the car, Shinholster exited and was unable to provide police with any explanation as to why he was in the area or the name of anyone living in the neighboring houses where he was parked. Additionally, Shinholster had $720 on his person and a receipt for a shipment made three days earlier from the Hardesty Boulevard address to an address in Pearland, Texas, which was the same city from which the drug-filled package was sent.

{¶3} Shinholster was indicted for possession of cocaine, in violation of R.C. 2925.11(A)(C)(4), and trafficking in cocaine, in violation of R.C. 2925.03(A)(C)(4). Both offenses carried a major drug offender specification under R.C. 2941.1410 and two forfeiture specifications under R.C. 2941.1417, related to the money and vehicle in his possession at the time of his arrest. A jury convicted Shinholster of all of the foregoing offenses and accompanying specifications, except for the forfeiture specification related to the money. Shinholster was sentenced to a total of fifteen years in prison.

{¶4} Shinholster now appeals from his convictions, asserting four assignments of error for our review.

II

Assignment of Error Number One

"THE TRIAL COURT ERRED IN DENYING CHRISTOPHER SHINHOLSTER'S MOTION TO SUPPRESS."

{¶5} In his first assignment of error, Shinholster argues that the trial court erred in denying his motion to suppress because the police lacked probable cause to arrest him. We disagree.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Hatch*, 9th Dist. No. 24870, 2010-Ohio-53, at ¶2, citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8. Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Hatch* at ¶2, quoting *Burnside* at ¶8. The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶8. "[A] trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." *State v. Motley*, 9th Dist. No. 24182, 2008-Ohio-6937, at ¶13.

{¶7} On February 2, 2010, Shinholster filed a pro se motion to suppress. On February 9, 2010, counsel for Shinholster filed a second motion to suppress, followed by a "nunc pro tunc" motion to suppress filed later that same day. Collectively, the foregoing motions challenged all evidence obtained by police when Shinholster was apprehended. The trial court held a hearing on the motions on the morning of trial and stated its findings for denying the motions on the record. At the hearing, Shinholster argued, as he does on appeal, that police lacked probable cause to arrest him when they blocked his car in the driveway, approached him with their weapons drawn, and prevented him from leaving the scene.

{¶8} "A seizure occurs when an individual is detained under circumstances in which a reasonable person would not feel free to leave the scene[. Therefore,] both an investigatory stop and an arrest thus constitute 'seizures' within the meaning of the Fourth Amendment." *State v. Synder*, 9th Dist. No. 06CA0018-M, 2006-Ohio-6911, at ¶13. Likewise, the Supreme Court has noted that "not all seizures of the person must be justified by probable cause to arrest for a crime." *Florida v. Royer* (1983), 460 U.S. 491, 498. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal

activity." *United States v. Cortez* (1981), 449 U.S. 411, 417. "[R]easonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White* (1990), 496 U.S. 325, 330. Reasonable suspicion requires only that the officer "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21.

> "The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors which fall into four general categories: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. No single factor is dispositive; the decision must be viewed based on the totality of the circumstances." *State v. White*, 9th Dist. No. 05CA0060, 2006-Ohio-2966, at ¶16, citing *State v. Bobo* (1988), 37 Ohio St.3d 177, 178-80.

Probable cause for an arrest, however, exists where at the moment of the arrest, from the information known to the arresting officers based on reasonably trustworthy information, a reasonably prudent person would be warranted in believing that the arrestee had committed or was committing an offense. *Beck v. Ohio* (1964), 379 U.S. 89, 91.

> "[T]he standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires 'only a showing that a probability of criminal activity exists.' [*State v*.] *Tejada*[, 9th Dist. No. 20947, 2002-Ohio-5777,] at ¶8, quoting [*State v*.] *Young*[, 11th Dist. No. 2000-A-0078, 2001-Ohio-4284,] at ¶23. Moreover, in analyzing whether officers had probable cause to proceed, reviewing courts will look to the totality of all the facts and circumstances as they existed at the time of the incident." See *State v. Fry*, 9th Dist. No. 23211, 2007-Ohio-3240, at ¶36, citing *Illinois v. Gates* (1983), 462 U.S. 213, 233." *State v. White*, 9th Dist. Nos. 23955 & 23959, 2008-Ohio-2432, at ¶13.

{¶9} Detective Raphael Caprez was the only witness to testify at the suppression hearing. He testified that he and several other detectives conducted surveillance of the neighborhood the morning of the controlled delivery. The target house for the package was 1146 Hardesty Boulevard, so some detectives were parked near the house while others circled the neighborhood in unmarked cars for a period of time beforehand. At approximately 10:05 a.m.,

Detective Caprez saw a silver Bonneville parked "right in front of 1146 [Hardesty Boulevard.]" He observed Shinholster driving the car and phoned in the car's license plate number to one of the other surveillance officers. Once Detective Caprez drove away, he saw the Bonneville pull away in his rear view mirror. Another officer reported to Detective Caprez that, at approximately 10:16 a.m., he saw the same silver Bonneville circling the block and turning onto Hardesty Boulevard for a second time. Detective Caprez testified that, based on his twenty-two years of experience with narcotic trafficking cases, where a suspect is anticipating the delivery of a drug-filled package to a third-party, it is common for the suspect to conduct "counter-surveillance" of the area beforehand to make sure that the police are not involved in the delivery before the suspect goes to the delivery location to ultimately retrieve the package.

{¶10} At 10:50 a.m., approximately five minutes after the controlled delivery was made, another detective told Detective Caprez that the silver Bonneville spotted in the area earlier had just pulled into the driveway of a house a few doors north and across the street from the target residence. Detective Caprez was told that the car had pulled all the way up the driveway, behind the house, so as to block the car from view from the street. Within seconds, Detective Caprez drove to the house where the car was spotted and pulled in the driveway behind Shinholster's car. At that point, Detective Caprez saw the car start in reverse, so he activated his lights to make sure Shinholster saw his car. He exited the car with his weapon in hand and approached Shinholster, asking him to turn off and exit the car. Detective Caprez conducted a pat down on Shinholster while questioning him as to what he was doing at the house. Shinholster indicated he was waiting on someone, but was unable to provide Detective Caprez with that person's name, nor did Shinholster know the name of the person who lived in either of the houses next to the driveway where he was waiting. Detective Caprez found $720 in twenty dollar bills in

Shinholster's shirt pocket. Another detective gave Detective Caprez a receipt he retrieved from the ground that Shinholster had discarded when he exited the car. The receipt was for a UPS package shipped three days earlier from the Hardesty Boulevard address to Pearland, Texas, which was the same city and state from which the cocaine package had arrived that morning. Another detective later read Shinholster his Miranda rights and placed him under arrest.

{¶11} Based on the foregoing testimony, the trial court's findings of fact were supported by competent, credible evidence. In light of this evidence, we conclude that there was reasonable suspicion for an investigatory detention based on Detective Caprez's significant experience with narcotics crimes, Shinholster's repeated presence near the Hardesty Boulevard location shortly before the controlled delivery, and his return to the area immediately thereafter, most notably, positioning his car across the street in an attempt to be unseen. See *White* at ¶16. Shinholster was unable to provide police with any reason for being in the area, had a significant amount of small bills in his pocket, and discarded a recent shipping receipt related to the same two addresses as were listed on the drug package that had just been delivered by police. Based on the totality of the circumstances, Detective Caprez then had probable cause to arrest Shinholster. Accordingly, the trial court did not err in denying Shinholster's motion to suppress. Therefore, his first assignment of error is overruled.

Assignment of Error Number Two

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM. R. 29 MOTION AS THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

Assignment of Error Number Three

"THE JURY CREATED A MANIFEST MISCARRIAGE OF JUSTICE AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶12} In his second and third assignments of error, Shinholster argues that his convictions are based on insufficient evidence and are against the manifest weight of the evidence. Shinholster challenges the sufficiency of the evidence by arguing that the State failed to prove that he was the person who committed the crimes because its key witness, Kisha Marshall, did not positively identify him in court, and further, that she testified she only knew him as "Chris" and was unaware of his last name. He argues that having the same first name as the perpetrator is insufficient to prove he committed the offenses at issue. In the alternative, Shinholster argues that, if this Court concludes that Marshall's testimony was adequate to identify him as the perpetrator, his convictions are against the manifest weight of the evidence because Marshall's testimony was uncorroborated and lacked credibility. We disagree.

{¶13} Though Shinholster has combined his sufficiency and manifest weight challenges in one argument in his brief, we address each issue in turn. In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 274. Furthermore:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386.

"In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386.

{¶14} It is a violation of R.C. 2925.11(A) to "knowingly obtain, possess, or use a controlled substance." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C.

2901.22(B). Cocaine is considered a controlled substance under R.C. 3719.41, Schedule II (A)(4). A person is guilty of first-degree felony drug possession and is a major drug offender under this statute if the controlled substance is cocaine in an amount equal to or exceeding 1,000 grams. R.C. 2925.11(C)(4)(f). "Possession may be actual or constructive." *State v. Kobi* (1997), 122 Ohio App.3d 160, 174. Constructive possession occurs when a person knowingly exercises dominion or control over an item, even without physically possessing it. *State v. Hankerson* (1982), 70 Ohio St.2d 87, syllabus. Circumstantial evidence is sufficient to support the elements of constructive possession. See *Jenks*, 61 Ohio St.3d at 272-73.

{¶15} It is a violation of R.C. 2925.03(A)(2) to "knowingly *** [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." Like R.C. 2925.11, R.C. 2925.03 links the penalty for trafficking drugs to the identity and weight of the drug. A person is guilty of first-degree felony drug trafficking and is a major drug offender if the controlled substance involved is cocaine in an amount equal to or in excess of 1,000 grams. R.C. 2925.03(C)(4)(g). We note that, though Shinholster recites the terms of the statute related to the specifications for which he was convicted, he does not set forth any argument challenging his convictions related to those specifications, so we decline to address them. App.R. 16(A)(7). See *State v. McShepard*, 9th Dist. No. 06CA009024, 2008-Ohio-1460, at ¶15 (declining to address appellant's drug trafficking conviction because he failed assert any argument or legal authority in support of a generalized statement that his conviction for that offense was based on insufficient evidence).

{¶16} At trial, the parties stipulated that the package at issue contained 1,555.5 grams of cocaine. Additionally, Detective Caprez recounted the events related to the delivery of the

package in a manner consistent with his testimony at the suppression hearing, detailed above. Specific to Shinholster's sufficiency challenge, the record reveals that Detective Caprez identified Shinholster as the driver he witnessed sitting in front of the targeted residence shortly before the drug delivery occurred. Shinholster was driving the car, which was registered in his name, when Detective Caprez stopped him in a nearby driveway shortly after the controlled delivery. Detective Caprez recovered a UPS receipt for a package shipped on July 20, 2009 from AOK Creations on Hardesty Boulevard to 2610 Rose Bay Drive in Pearland, Texas, which was the same as the return address on the package police had delivered to Hardesty Boulevard just three days later.

{¶17} Kisha Marshall, the woman who signed for the package at the Hardesty Boulevard home, also testified that the drug-filled package belonged to Shinholster. According to Marshall, she and Shinholster had been friends over ten years. Though she characterized their relationship as "mostly a sexual [one]," she also stated they "were friends" and that she considered him someone she could talk to about concerns or questions she was having about her teenage son, who she has been raising by herself since she was in high school. Marshall admitted that she had only recorded Shinholster's name in her cell phone as "Chris" and that she was not sure how to spell or pronounce his last name.

{¶18} Marshall explained that when she was with Shinholster on July 20, 2009, he asked her if she would run into the UPS store to mail a package for him. She agreed, stating that it was not uncommon for Shinholster to give her money to run into a gas station or store and pay for things while he waited outside in the car. The package was already sealed, but was not addressed. Shinholster read Marshall an address from his cell phone for a location on Rose Bay Drive in Pearland, Texas. Marshall wrote the address on the back of one of her business cards

for AOK Creations, a catering and printing business she and her mother were starting out of her parents' home on Hardesty Boulevard. Marshall used Shinholster's money to mail the package to the address he provided and gave the clerk her business address as the return address on the package.

{¶19} According to Marshall, she had "two or three" cell phone numbers through which she could reach Shinholster, but primarily reached him through a number with a 330 area code (the "330 number") and another number with a 702 area code (the "702 number"). The State introduced records from both Marshall's cell phone and the 702 number she called to reached Shinholster. The 702 number was a prepaid cell phone, and therefore, had no registered name or specific user identified with it.

{¶20} On July 20, 2009, Marshall's cell phone records showed an outbound call to Shinholster's 330 number within minutes of the time stamped UPS receipt recovered from Shinholster. Marshall testified that she called Shinholster at his 330 number while she was inside the UPS store and that he called her back. The records show an incoming call to Marshall's phone just minutes later from the 702 number that Marshall testified was Shinholster's number. Additionally, the State introduced records for outgoing calls from the unregistered 702 number which aligned with incoming calls to Marshall's phone and were corroborated by Marshall's testimony that Shinholster was the one making the calls to her at various times that day, as well as the intervening days before the day the package was delivered.

{¶21} Marshall testified she agreed to allow Shinholster to have a package shipped to her parents' house. She was in the process of moving out of her parents' home into an apartment, and because her car was not working, Shinholster had offered to help her take some of the remaining items to her new location. Shinholster asked her if he could have a package

sent to her parents' house for her to receive while she was there gathering up her things, because he had to go to work and did not want the package sitting on his porch all day. Marshall agreed.

{¶22} On July 23, 2009, Shinholster took Marshall from her apartment back to her parents' house, where she slept, showered, and gathered her things. According to phone records and Marshall's testimony, Shinholster called at approximately 10:17 a.m. to see if his package had arrived yet, and she told him "no." Once the package arrived at 10:45 a.m., Marshall called both Shinholster's 702 number and his 330 number to let him know the package had arrived, so he could come get her, her things, and his package.

{¶23} Detective Pamela Brown testified that she questioned Marshall once police entered the house, and Marshall informed her that she was "getting a delivery for Chris" whose "[last name] was S H something[.]" She informed Detective Brown that she was supposed to call him as soon as the package arrived and he was going to come to pick up her and the package.

{¶24} When viewed in a light most favorable to the State, the foregoing evidence could have convinced the jury beyond the point of reasonable doubt that Shinholster was engaged in possession and trafficking of cocaine in an amount over 1,000 grams. See *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. Though Shinholster never had actual possession of the package, the testimony of both Detective Caprez and Marshall evidenced that he arranged for and monitored its arrival, directed Marshall what to do upon receiving it, and was awaiting actual possession of the package when police arrested him. Accord *State v. Fabian*, 11th Dist. No. 2001-T-0080, 2002-Ohio-3152, at ¶25 (concluding that there was sufficient evidence to support a conviction for methamphetamine possession where police had removed the drugs from the package they delivered to defendant and defendant had flushed the replacement contents down

the toilet); *State v. Williams* (1996), 117 Ohio App.3d 488, 492-94 (affirming a conviction for cocaine possession where defendant never retrieved the package from the person who accepted delivery). Shinholster also takes issue with the fact that Marshall was not asked during trial to positively identify him as the person about whom she was speaking. We agree with the Eighth District, however, that "[t]he failure to conduct an in-court identification is not fatal to the State's case when the circumstances of the trial indicate the accused is indeed the person about whom the witnesses are testifying." *State v. Melton*, 8th Dist. No. 87186, 2006-Ohio-5610, at ¶16. Despite being unable to spell or pronounce Shinholster's last name and not identifying him in court, there was no suggestion from Marshall's testimony that there was any person other than Shinholster involved in this matter and it is apparent from the record that Shinholster was, in fact, the person about whom Marshall was testifying. Accordingly, his argument in that respect lacks merit.

**{¶25}** With respect to Shinholster's manifest weight challenge, he essentially argues that Marshall was not a credible witness and that her testimony was unsupported by the evidence. When considering a manifest weight argument, this Court:

> "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant

a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175; see, also, *Otten*, 33 Ohio App.3d at 340.

{¶26} At trial, the postal inspector from the Cleveland field office, who specialized in narcotics investigations, testified that upon researching the name of the parties who had received mail at 2610 Rose Bay Drive in Pearland, Texas, he was able to identify several names, including Yolanda Caldwell and Christopher Caldwell, as individuals who had received mail there. In addition to his testimony placing Shinholster outside the Hardesty Boulevard house immediately before and after the controlled delivery, Detective Caprez testified that he had arrested a man by the name of Christopher Caldwell in the early 1990's for selling cocaine in Akron and that his wife's name was Yolanda. Detective Caprez testified Christopher Caldwell is the same age as Shinholster and had graduated from Buchtel High School. Marshall testified that Shinholster also went to Buchtel High School.

{¶27} Police recovered several documents and receipts from Shinholster's vehicle that, when listing his name and address on those items, also listed a cell phone number that was identical to the 330 number that Marshall testified was one of the numbers she used to reach Shinholster. They also found two cell phone chargers in Shinholster's car, but were unable to find any cell phones when they searched the nearby yards in the heavy rain that day.

{¶28} To the extent Shinholster challenges Marshall's credibility, we note the discrepancies he points to in her testimony related to the nature of her relationship with her parents and her response to the undercover delivery person were insignificant and had little, if any, bearing on the offenses at issue. Moreover, we note that her testimony with respect to the phone numbers she had to reach Shinholster and her contact with him at those numbers were

corroborated by cell phone records and documents found in his car. Further, we note that "[t]he [jury] was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony." *State v. Kuhn*, 9th Dist. No. 06CA008861, 2006-Ohio-5059, at ¶21. Based on the foregoing evidence, the jury could have reasonably believed that Shinholster was the man that had arranged for the cocaine to be delivered from Texas to Marshall's parents' house and that he was at a neighboring house attempting to retrieve the package with the intention of obtaining and later selling it. Accordingly, the jury did not lose its way in convicting Shinholster of possession and trafficking cocaine in excess of 1,000 grams.

{¶29} Shinholster's arguments that there was insufficient evidence to support his convictions and that they are against the manifest weight of the evidence lack merit. Accordingly, his second and third assignments of error are overruled.

Assignment of Error Number Four

"THE PROSECUTOR COMMITTED MISCONDUCT BY CONSIDERING A DISMISSAL OF THE CHARGES AGAINST THE CO-DEFENDANT BASED UPON HER TESTIMONY[.]"

{¶30} In his fourth assignment of error, Shinholster argues that it was plain error for the prosecutor to consider dismissing the charges against Marshall based on her testimony. We disagree.

{¶31} Under Crim.R. 52(B), "a plain error that affects a substantial right may be noticed by an appellate court despite not having been brought to the attention of the trial court." *State v. Coleman*, 9th Dist. No. 06CA008877, 2006-Ohio-6329, at ¶10. As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has established that the outcome of the trial clearly would have been different but for the alleged error. Id.

**{¶32}** Allegations of misconduct on the part of the prosecutor "must be considered in light of the whole case," *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, and "will not serve as grounds for reversal unless the defendant was denied a fair trial." *State v. Howe* (July 25, 2001) 9th Dist. No. 00CA007732, at *3, citing *Maurer*, 15 Ohio St.3d at 266. In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court determines if the prosecutor's actions were improper, and, if so, whether the substantial rights of the defendant were actually prejudiced. *State v. Smith* (1984), 14 Ohio St.3d 13, 14.

**{¶33}** Initially, Marshall was arrested and indicted as a co-defendant in relationship to the case at bar. On cross-examination, defense counsel asked whether the prosecutor had given Marshall a promise of leniency in her case in exchange for testifying against Shinholster. Marshall responded that "[i]f [she] was able to *** testify truthfully" that "[her] case would be considered for dismissal." Upon redirect examination, the prosecutor clarified with Marshall that he had agreed to consider dismissal of the charges against her only if she "testif[ied] truthfully against [Shinholster] and t[ook] a polygraph[.]"

**{¶34}** This Court and others have found plain error where the prosecutor entered into an agreement with a co-defendant which was contingent on the successful prosecution of the case. See *State v. Chapman*, 9th Dist. No. 07CA009161, 2008-Ohio-1452, at ¶21-35 (citing cases and finding plain error where the State's key witness testified that he entered into a plea agreement with the prosecutor whereby he would be offered a thirteen year sentence in lieu of a fifty-one year sentence if his testimony resulted in a conviction). Where a promise of leniency is offered in exchange for outcome-oriented testimony, a co-defendant is "motivated *** to commit perjury or at the least, 'to selectively remember past events in a manner favorable to the indictment or conviction of [the other defendant].'" Id. at ¶33, quoting in *U.S. v. Waterman* (C.A.8, 1984), 732

F.2d 1527, 1532. Here, no such contingency agreement was made. Instead, the State only agreed to consider dismissing Marshall's charges if she testified truthfully and submitted to a polygraph examination, thereby testing the veracity of her statements. Certainly the State would not consider dismissing the charges against Marshall if she failed to respond truthfully throughout her polygraph examination. Moreover, the Supreme Court has held that testimony regarding any promises of immunity or leniency offered by the State in exchange for a co-defendant's testimony is admissible at trial, leaving it for the jury to determine how much weight to accord to such testimony. *State v. Wolery* (1976), 46 Ohio St.2d 316, 319-23 (noting that "[t]he testimony of a witness is not rendered inadmissible merely because he expects or has been promised immunity from prosecution, a lesser penalty, or dismissal of a pending charge" and concluding that such agreements speak, instead, to the credibility of such testimony).

{¶35} Because there was nothing improper with respect to the prosecutor's conduct in this case, Shinholster cannot prove he suffered any prejudice as a result. Accordingly, Shinholster's fourth assignment of error is overruled.

### III

{¶36} Shinholster's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

CARR, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

MARTHA HOM, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.